Good morning, Your Honor. I'm Sharon Healy. I'm representing the petitioner Santos Martinez-Baharona. Just as a preliminary question, in your brief you talk about the husband. Now, does he have an independent petition someplace, somewhere? He did have. Both parties filed independent asylum petitions based on both joint and separate incidents that had happened to them. And at the immigration judge level, their two separate cases were consolidated. They were consolidated? They were consolidated before the immigration judge, and they had one hearing that went forward on their consolidated claims. It appears that no notice of appeal was filed for him before us. No petition was filed to us. Okay. I came in on this case later. I believe that both, that the consolidated notice had all parties in it, but I apologize. Actually, it did not. So it appears he's not before us, unless he's just derivative. Okay. My arguments today, in any event, will concern the lead petitioner, Santos Martinez-Baharona. And the first comment that I'd like to make is I believe the Board of Immigration Appeals mischaracterized this case in a fairly horrible way, because the BIA, in its finding, refers only to threats that Ms. Baharona received. And this is a mischaracterization of the testimony. She clearly had past persecution that went well beyond threats. It included repetitive beatings, one, at least, that sent her to the hospital, having a gun pointed at her stomach when she was pregnant. Let's assume all that's true and that she was terribly mistreated by her husband in a brutal way. But how do you connect that to any political reason or religious reason or other reason that would qualify under the statute? Well, I'm not contending that she is seeking asylum for political persecution. Our contention is that she is a member of a particular social group. As I've argued in my brief, under the lead case of matter of R.A., Ksenia, victims of domestic violence can fall within the social group rubric and therefore are protected under asylum law. What is the group? Pardon me? What is the group, precisely? Okay, her group would be defined by gender, by family, by nationality. There are certain criteria that are set forth in matter of ACOSTA, which define membership in a particular social group. And if you look at the leading case of R.A., she is square on with both her under both that law and under the various criteria that is set forth in matter of ACOSTA as a... All women or all married women or all women who've been beaten? Exactly what is the class? Well, in this case, her social group would be El Salvadorian women in relationships with controlling men who are victims of domestic violence who believe that they should have equal rights. So those are just under the same parameters of R.A. Do we have any cases that have recognized this group? Yes. Well, the leading case is matter of R.A. Matter of ACOSTA recognizes it. Matter of Kasinga recognizes that, although that was a slightly different case, it also looks at social groups that were defined by gender, ethnicity, bodily integrity. That in particular was an FGM case, but it looks at the same criteria that are set forth in matter of ACOSTA. Gender also can particularly define membership. Even if we were to recognize that group, you would still have to have evidence that the government either actively supported the persecution or was willing to turn a blind eye to complaints to that. Do you have any evidence that the government was unwilling to protect her in this case? I think that it's not. With respect, Your Honor, I think it doesn't have to be that they're unwilling. It could also be unable. Unable. Is there any evidence? Did she complain to the government here? She complained to the police? She did not complain because, as the country reports indicate, there is such a poor record in El Salvador of government assistance with domestic violence that in that case it would be because of the fact that it's not treated as a serious crime, that these people who commit these crimes are not persecuted, that it's more dangerous for them. On the other hand, her husband was jailed on a number of different charges in El Salvador. It's pretty clear that the government wasn't trying to protect him from other things. The government, you know, clearly they had, but it wasn't domestic violence. And their record as far as domestic violence, as indicated by the evidence that was attached to her initial asylum interview, shows that they have a very poor record. If you are correct, then every victim of domestic violence in El Salvador is entitled to asylum in the United States, whether or not they complained to the police or ever said one word to anybody. I think that you have to look at it on a case-by-case basis. What is the, you know, domestic violence, whether it's reasonable in this case for them to complain to the police, whether there is a history of protection. But it doesn't matter. I mean, as this court has held recently in a Guatemala case, the fact that everybody in that case, it was remanded to see whether Guatemalan women could comprise a social group. And the court held that, you know, it doesn't matter that the social group is extremely large as long as it meets the prongs that are set forth in matter of Acosta. So the fact that possibly, and I'm, you know, I would have to look into that. I'm sure there may be differentiating characteristics. But the fact that a wide number of domestic violence victims in El Salvador could potentially claim asylum does not rule them out as a member of social group. The size of the social group is not a criteria. As I mentioned, in Guatemala, it's possible that the entire female gender could be social group because of what's going on. If there aren't any more questions, I can reserve the rest. Okay. Let's hear from the government. Good morning, Your Honors. May it please the Court. My name is Stephanie Savorin. I'm an attorney with the U.S. Department of Justice, and I represent the government in this matter. The issue before this Court is whether the record compels the reversal by the Board of the denial of Ms. Martinez-Bajarone's applications for asylum, withholding of removal, and protection under the Convention Against Torture. Because Ms. Bajarone's claims do not rise to the level of persecution, and because the record is devoid of corroborative evidence, and because Petitioner has failed to show that the government of El Salvador would acquiesce or consent to future torture, the Court should deny the petition for review. What do the reports on country conditions show? The 2005 country report from the Department of State shows that domestic violence is a pervasive problem in El Salvador. However, at the same time, it acknowledges that the government of El Salvador has joined with NGOs and other organizations to combat domestic violence, largely through law enforcement, through education, and through other tactics. As an initial point, first of all, I want to note that the Board did not make any mention of whether or not what Ms. Martinez-Bajarone alleges to be on account of a protected ground. The Board did not reach that. Therefore, the issue is not properly before the Court. Was it raised to the Board? Unfortunately, Petitioner failed to raise it to the Board. In her notice of appeal, she says that LEAD responded fears harm because of her membership in the Social Group of Domestic Violence Victims. But her primary issues raised on appeal were that she did not have a well-founded fear of persecution and that the IJ erred by finding her not credible. She mentioned it as an issue. She mentioned it as an issue. The government's contention is that she didn't develop it in the body of her argument. No, so she failed to exhaust her administrative remedies. Therefore, should the Court want to look to it, it needs to remand first to the agency to decide in the first instance whether or not what these events she claims to be past persecution were on account of a protected ground. Also, it is important to note that the Petitioner in this case has failed to provide any corroborative evidence. She has not provided any corroborative evidence of her claims that she was in an abusive relationship. Did the Board cite that as a failing? It did. It did or did not? It did. Okay. It noted that she didn't provide any corroborative evidence. Was there any inconsistency about the testimony of the violence against her? Ordinarily, if there's no challenge to that, we don't require corroboration. It's a post-real ID case, though. She filed her application in 2006. Therefore, the post-real ID amendments to the INA state that if the trier of fact determines that corroborative evidence is necessary in order for the Petitioner to develop her claim, that Petitioner must provide such evidence unless she's unable to do so. Why is it necessary in this case? There was no challenge to her testimony about what had happened to her. Well, testimony can suffice, but only if the trier of fact determines that it's credible, persuasive, and detailed. They didn't find her incredible. That's not the problem here, is that right? No. In fact, the Board overturned the IJ's adverse credibility determination and went through a thorough analysis, but still found that she needed to corroborate her claims in this instance. As I look at the Board's order on page 2, I'm in the third full paragraph on that page. It appears to me that two places in that paragraph where the BIA refers to corroboration, that it's referring to the threats that he made after they had separated and she had had no contact with him. So these are not direct things as to which she can testify. These are things as to which she's quoting other people. Her mother, for example, saying that her ex-husband comes by and drops by the house and makes some threats. So these aren't things as to which she can offer direct testimony, and that it would be useful to corroborate. Am I wrong that that's what the Board was concerned about here, rather than the whole scope of her testimony? Well, the Board noted that she failed to provide any corroborative evidence in the case. So it would seem to go to her past persecution as well as her well-founded fear of persecution. However, you don't have a personal statement from either Ms. Martinez-Barrona or Mr. Ramos in the record. There are no affidavits from any of the people who informed her of these threats. It should be noted that she did not personally hear these threats, that they came from Mr. Enrique Hernandez's family members. She has no papers from a hospital in El Salvador where she allegedly received medical treatment. There are no police reports because she did not report any incidents of past mistreatment to the police. And, in fact, during testimony, government counsel had asked Ms. Martinez-Barrona, and this is on page 88 of the record, did you ever ask for any letters or declarations from your family or friends in support of your application for asylum? There Ms. Martinez-Barrona responded that she asked her mother to send a letter, but it's not in the record. There's no indication that she ever attempted to admit it into the record. And she has not explained her failure to submit any corroborating evidence. Let's for the moment assume that she, in fact, was brutally treated and that that's accepted. Is she in a group that can be a social group that can be recognized? Well, it is for the agency to decide in the first instance, so the court would have to remand the case to their. I should note that opposing counsel raised the case of the matter of our aid by the board. However, that has been vacated. And therefore, the board would need to determine for the first instance again. So largely based on the fact that she failed to provide corroborative evidence and failed to show any determination that the or failed to show objective evidence that the government at El Salvador would acquiesce or consent to her torture, this court should deny the petition for review. Okay. Thank you. Ms. Haley, you've reserved some time. Your Honor, as opposing counsel mentioned, although I believe and I've pointed out why I believe Ms. Barrona is a member of a particular social group, the board did not reach that. So this case should be remanded. Did you exhaust it? It was raised in the brief. It was raised both in the notice and it was mentioned in the brief. Although the argument may not have been as explored as fully, the BIA was on notice that that was an issue, and this was not reached. The board made its decision solely on the matter of whether or not she had suffered past persecution or a well-founded fear of persecution. But the board declined to address the past persecution that she suffered, and clearly beatings that require hospitalization and having a gun pointed at somebody would be persecution. And then it should go back to determine whether this is persecution based on membership of a particular social group since the issue wasn't raised. As for the evidence, the board overturned the judge's adverse credibility finding, said that it was error, and so her credible testimony would suffice in this case. The board found her credible testimony is enough, even in post-Real ID Act cases to meet her burden of proof. There was no explanation as to the judges how she should have obtained these documents, and she wasn't given an opportunity to discuss whether some of these documents would have been even realistic to obtain given the character of this person and the fact that she would be obtaining documents from people who are still in El Salvador. So we have a woman that credibly testified to past persecution. The board did not even make a finding as to whether the things in the past did constitute past persecution. It should have. Clearly they did, and that gives her a rebuttable presumption of future persecution. And there has been no evidence to indicate that country conditions in El Salvador have changed so in order to rebut that, the human rights reports indicates that it's very poor conditions for domestic violence. And while the government may be attempting, they have not done enough to stop this. It's not being taken care of. Okay. Thank you. Thank you. Thank both counsel for the arguments. Martinez-Barrona is submitted.
judges: Fletcher B. , Fernandez, Bybee